STATE OF NORTH CAROLINA v. RICKY LEE SANDERSON

No. 374A86-3

(Filed 24 July 1997)

**1. Constitutional Law § 230 (NCI4th)— capital resentencing—aggravating circumstance—rape—not submitted in prior hearings—not double jeopardy**

The trial court did not err in a capital resentencing by denying defendant's motion *in limine* to exclude references to an alleged rape and by submitting the aggravating circumstance that the murder was committed during the commission of a rape. Although defendant contended that submitting rape as an aggravating circumstance would violate double jeopardy principles because rape was not submitted as an aggravating circumstance in the first or second sentencing hearings, jeopardy attaches in a capital sentencing proceeding only after there has been a finding that no aggravating circumstance is present. In this case, neither the first nor the second juries found that no aggravating circumstance existed; to the contrary, each of those juries found at least one aggravating circumstance to exist and recommended death. To the extent that *State v. Silhan*, 302 N.C. 223, can be read as supporting any other rule, it is inconsistent with the more recent decision of the United States Supreme Court in *Poland v. Arizona*, 476 U.S. 147, and must no longer be considered authoritative on this point.

**Am Jur 2d, Criminal Law §§ 309, 314.**

**2. Constitutional Law § 230 (NCI4th)— capital resentencing—aggravating circumstance—not double jeopardy**

The trial court did not err in a capital resentencing by submitting as an aggravating circumstance that defendant had committed the murder while engaged in the commission of a rape where the evidence submitted at the sentencing hearing, defendant's third, supported the circumstance. Whether the evidence at the first or second would have supported submission of the circumstance, or whether the trial court in fact submitted the circumstance, is irrelevant. Neither jury in two prior capital sentencing proceedings found that no aggravating circumstance existed and neither recommended a life sentence; double jeopardy considerations do not come into play.

**Am Jur 2d, Criminal Law §§ 309, 314.**

STATE v. SANDERSON

[346 N.C. 669 (1997)]

**3. Criminal Law § 1366 (NCI4th Rev.)— capital resentencing—aggravating circumstance—kidnapping—change of kidnapping theory from prior sentencing**

The trial court did not err in a capital resentencing by submitting to the jury the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a kidnapping where defendant had pled guilty to kidnapping, the State submitted the aggravating circumstance at the first two sentencing hearings, using language that the kidnapping had been to facilitate flight or avoid arrest, both sentencing juries found this circumstance to exist, and the State shifted its theory at the third hearing to terrorizing the person confined. Defendant contended that the State had failed to produce evidence at the third sentencing hearing that he kidnapped the victim for the purpose of terrorizing her, but it is irrelevant which theory the State later uses as a basis for the submission of this aggravating circumstance once a defendant pleads guilty to a charge. Moreover, the State's evidence at the third hearing satisfied this aggravating circumstance in that the State presented various confessions by defendant that he had kidnapped the victim prior to killing her, defense counsel acknowledged on several occasions that defendant had kidnapped the victim, and the State's evidence tended to show that the 16-year-old victim was clearly subjected to psychological terror prior to her death in that defendant forcibly took her from her home, drove her around in a car for over two hours, took her to a secluded area, raped her, placed her in the trunk of a car while he dug a shallow grave, strangled, and stabbed her.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

**4. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing—nonstatutory mitigating circumstance—innocent man saved by defendant's confession—cumulative**

The trial court in a capital resentencing properly refused to submit as cumulative the nonstatutory mitigating circumstance that defendant's voluntary confession may have saved an innocent man from execution.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

**STATE v. SANDERSON**

[346 N.C. 669 (1997)]

5. **Criminal Law § 1351 (NCI4th Rev.)— capital resentencing—instructions—mitigating circumstances—unanimity**

Under a plain error review, the trial court's instructions in a capital resentencing did not preclude consideration of mitigating circumstances which had not been unanimously found by the jurors where the court instructed the jury on Issue Three that each juror may consider any mitigating circumstance that the jurors determine to exist. When these instructions are viewed in context with the instructions for Issue Two, they neither express nor imply a unanimity requirement for considering mitigating circumstances. The difference between the portion of the trial court's Issue Three instructions and the pattern jury instructions is minimal; it cannot be discerned whether the trial court's Issue Three instructions merely contained a *lapsus linguae* in pluralizing "juror" or whether a mistake was made in the transcript, but no juror was precluded from considering mitigating evidence that he or she found in Issue Two.

Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.

6. **Constitutional Law § 312 (NCI4th)— capital sentencing—failure to object to instruction—test for ineffective assistance of counsel—not met**

A defendant in a capital resentencing was not denied his Sixth Amendment right to counsel by his trial counsel's failure to object to the Issue Three instruction given by the court. In order to prevail on an ineffective assistance of counsel claim, a defendant must first show that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and must then show that counsel's performance deprived him or her of a fair trial. Counsel was not deficient in failing to object to the instructions here because the instructions were sufficiently like the pattern instructions and did not require jurors to consider only those mitigating circumstances unanimously found by the jury. In any event, defendant has not made any showing that counsel's performance deprived him of a fair capital sentencing proceeding.

Am Jur 2d, Criminal Law §§ 748, 749, 751, 752.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

**7. Constitutional Law § 226 (NCI4th)— resentencing on remand for prosecutorial misconduct—no mistrial—not double jeopardy**

The trial court did not err in a capital resentencing by denying defendant's motion for a life sentence where the proceeding was defendant's third, and defendant moved before the proceeding for a life sentence because of the prosecutor's persistent misconduct in the prior sentencing proceeding, which had resulted in the remand for a new proceeding. The United States Supreme Court has noted that double jeopardy principles could bar a state from retrying a criminal defendant when prosecutorial misconduct resulted in a mistrial. No mistrial was granted at the second capital sentencing proceeding in this case; vacating the sentence and remanding for a new proceeding is not the equivalent. Moreover, the North Carolina Supreme Court did not find evidence of bad faith in remanding for a new sentencing proceeding and the principles discussed in *United States v. Dinitz*, 424 U.S. 600, and *Oregon v. Kennedy*, 456 U.S. 667, have no applicability here.

**Am Jur 2d, Criminal Law §§ 263, 264, 291.**

**8. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate**

A sentence of death was not disproportionate where the record fully supports the aggravating circumstance found by the jury, there is no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary consideration, none of the seven cases in which the death penalty has been found disproportionate was factually similar to this case, none of those seven cases involved a victim who was also kidnapped and sexually assaulted, and this case is also distinguishable in that the murder was physically and psychologically brutal. The victim was only sixteen years old and was at home, sick and alone, when defendant attempted to break into the house; she was kidnapped from her home and driven around for at least two hours before she was taken to an isolated area where she was raped; just after she was raped, defendant placed her in the trunk of his car while he dug her shallow grave; she was choked; and then she was stabbed because defendant was not sure she was dead. The terror the victim must have experienced is staggering and clearly distinguishes this case from those in which the death penalty has been found disproportionate. Moreover, defendant

killed the victim in order to eliminate her as a potential witness after she saw him attempting to rob her home; killing another human being for the purpose of eliminating him or her as a witness reveals a particularly callous and depraved heart.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Ross, J., on 3 November 1995, in Superior Court, Iredell County, upon a plea of guilty of first-degree murder. Heard in the Supreme Court 15 April 1997.

*Michael F. Easley, Attorney General, by William N. Farrell, Jr., Senior Deputy Attorney General, and Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Burton Craige for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant Ricky Lee Sanderson was indicted in Davidson County on 3 March 1986 for the first-degree kidnapping and murder of Sue Ellen Holliman. He pled guilty to both charges on 7 April 1986. Venue for sentencing was changed to Iredell County. A capital sentencing proceeding was held in May 1987, and the jury recommended the death sentence. The trial court sentenced defendant to death and to a term of forty years' imprisonment for the kidnapping. On appeal, this Court found *McKoy* error in the capital sentencing proceeding and sent the case back for resentencing. *State v. Sanderson*, 327 N.C. 397, 394 S.E.2d 803 (1990). A second capital sentencing proceeding was conducted in May 1991. Again, the jury recommended death, and the trial court sentenced defendant accordingly. On a second appeal

to this Court, we concluded that the proceeding was tainted by the prosecutor's "persistent misconduct" and remanded for another capital sentencing proceeding. *State v. Sanderson*, 336 N.C. 1, 442 S.E.2d 33 (1994). This, defendant's third capital sentencing proceeding, was conducted at the 16 October 1995 Criminal Session of Superior Court, Iredell County. This jury also recommended a sentence of death, and the trial court sentenced defendant accordingly.

The State's evidence tended to show, *inter alia*, that on 14 March 1985, defendant abducted sixteen-year-old Sue Ellen Holliman from her home and drove her to a secluded area. There he raped, strangled, and stabbed her and then buried her body in a shallow grave. Sue Ellen was last seen alive by her father at around 12:30 p.m. on 14 March. She had stayed home from school because of an illness, and Mr. Holliman had come home during lunch to check on her condition. He found his daughter to be feeling better and returned to work after ten or fifteen minutes. When Sue Ellen's mother came home later in the afternoon, she could not find Sue Ellen and called the police.

The body of Sue Ellen Holliman was found on 15 April 1985 in a remote field in the woods. The body was clothed in sweatpants that were gathered around the ankles, a T-shirt that had been pulled up prior to the stabbings, a bra that appeared to have been torn or cut, and a pair of panties pulled down to the lower thighs. The body had three stab wounds just below the breastbone, most likely caused by a knife. Decomposition of the body precluded any possibility for the medical examiner to examine it for physical evidence of strangulation or rape. The victim died of stab wounds to the chest and abdomen.

On 15 May 1985, Elwood "Woody" Jones, an employee of a business managed by the victim's family, confessed to the murder of Sue Ellen Holliman. He was indicted for first-degree murder and was awaiting trial when defendant, in prison for another crime, confessed to the same murder.

On 21 January 1986, defendant, then an inmate at Central Prison, called the Davidson County Sheriff's Department and indicated that he wished to make a statement about a murder. During the initial interview, defendant told officers from the Davidson County Sheriff's Department and the State Bureau of Investigation that he had stabbed, raped, and buried Sue Ellen Holliman.

STATE v. SANDERSON

[346 N.C. 669 (1997)]

On 5 February 1986, defendant made another statement to the effect that on 14 March 1985, he had been driving around the Sapona area of Davidson County looking for a home to break into. He selected the Hollimans' house because it was surrounded by woods. As he attempted to enter the home, the victim met him at the door. Defendant, surprised to see her, asked if he could use the phone. When she replied that she was not allowed to let anybody into the house while her parents were away, defendant barged into the house. Defendant asked the victim if there was money in the house, and she told him there was not. Defendant decided to "just get out of there" and took the victim with him to prevent her from reporting his license plate number. He told her to get on the floorboard of his car. He then drove to a secluded area, laid the victim on the ground, and raped her. After this, defendant forced the victim into the trunk of his vehicle while he dug her grave. Defendant then removed the victim from the trunk, forced her to sit down, and began choking her until she lay on her side. Unsure whether she was dead, defendant then got a knife from his car, rolled the victim over, and stabbed her in the chest.

Paint chips recovered from the victim's clothing were consistent with paint from defendant's car, and a pubic hair recovered from the driver's seat was microscopically consistent with the victim's pubic hair. Various fibers recovered from the victim's clothing were found to match fibers taken from defendant's car.

[1] By his first assignment of error, defendant contends that the trial court erred in denying his motion *in limine* to exclude references to the alleged rape and by submitting the aggravating circumstance that the murder was committed during the commission of a rape.

At defendant's first capital sentencing proceeding, the trial court excluded portions of defendant's confession where he confessed to raping the victim. Rape was not submitted for jury consideration as an aggravating circumstance at that capital sentencing proceeding. At defendant's second capital sentencing proceeding, the prosecutor stated that he had no evidence of rape and would not refer to any alleged rape or seek to use it as an aggravating circumstance. At this second capital sentencing proceeding, defendant's brother testified that defendant admitted he raped the victim before killing her, and defense mental health expert Dr. Sultan testified that defendant told her he raped the victim. The prosecutor thereafter requested that rape be submitted as an aggravating circumstance, but the trial court denied the request.

STATE v. SANDERSON

[346 N.C. 669 (1997)]

At the third capital sentencing proceeding, defendant filed a motion *in limine* to exclude references to the alleged rape and argued that submitting rape as an aggravating circumstance would violate double jeopardy principles set out in this Court's opinion in *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981). The trial court denied defendant's motion, and the State presented evidence that defendant had raped the victim before he killed her. The trial court also submitted the aggravating circumstance that the murder was committed during the commission of a rape. The jury found that aggravator to exist and used it to support its recommendation of the death sentence. Defendant contends that the denial of the motion *in limine* and the submission as an aggravating circumstance that the murder occurred during the course of a rape violated constitutional principles against double jeopardy. We disagree.

Once a defendant has been tried for and acquitted of a crime, the Double Jeopardy Clause of the Fifth Amendment protects him from being tried again for that crime. *United States v. DiFrancesco*, 449 U.S. 117, 129-30, 66 L. Ed. 2d 328, 343 (1980). The principles of the Double Jeopardy Clause of the Fifth Amendment apply to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969). The prohibition against double jeopardy is also embodied in the "Law of the Land" clause of the North Carolina Constitution. N.C. Const. art. I, § 19; *State v. Crocker*, 239 N.C. 446, 80 S.E.2d 243 (1954).

In *State v. Silhan*, decided in 1981, this Court was faced with the application of double jeopardy principles to a second sentencing proceeding in a capital case. 302 N.C. 223, 275 S.E.2d 450. We compared a North Carolina capital sentencing proceeding with a determination of guilt or innocence in a trial. We concluded in *Silhan* that the Double Jeopardy Clause could therefore apply to capital sentencing proceedings. We further stated:

> If upon defendant's appeal of a death sentence the case is remanded for a new sentencing hearing, double jeopardy prohibitions would not preclude the state from relying on any aggravating circumstance of which it offered sufficient evidence at the hearing appealed from and which was either not then submitted to the jury or, if submitted, the jury then found it to exist. The dictates of double jeopardy would preclude the state from relying on any aggravating circumstance of which it offered insufficient evidence at the hearing appealed from.

*Id.* at 270, 275 S.E.2d at 482. We also enunciated a rule in *Silhan* whereby an aggravating circumstance could properly be submitted at a new capital sentencing proceeding, stating:

> [I]f upon defendant's appeal, this Court vacates a death sentence for trial error, it will remand for a new sentencing hearing only if there are aggravating circumstances which would not be constitutionally or legally proscribed at the new hearing. An aggravating circumstance would not be so proscribed at the new hearing if (1) there was evidence to support it at the hearing appealed from; and (2) it was not submitted to the jury or, if submitted, the jury found it to have existed; and (3) there is no other legal impediment (such as the felony murder merger rule) to its use. If all aggravating circumstances would be constitutionally or legally proscribed at the new hearing, this Court will not remand for a new sentencing hearing but will order that a sentence of life imprisonment be imposed. An aggravating circumstance would be so proscribed at the new hearing if (1) there was no[t] sufficient evidence to support it at the hearing appealed from; or (2) the jury at the hearing appealed from, after considering it, failed to find that it existed; or (3) there would be some other legal impediment . . . to its use.

*Id.* at 270-71, 275 S.E.2d at 482-83.

At the time that *Silhan* was written, the United States Supreme Court had not ruled directly on the issue of how double jeopardy principles are to be applied to aggravating circumstances in a capital sentencing proceeding. Two months after *Silhan* was filed, the United States Supreme Court handed down an opinion holding that a jury's decision in a capital sentencing proceeding to sentence a defendant to life imprisonment should be considered an "acquittal" of the death penalty under the Double Jeopardy Clause. *Bullington v. Missouri,* 451 U.S. 430, 446, 68 L. Ed. 2d 270, 284 (1981).

Several years later, in *Poland v. Arizona,* the Supreme Court stated that a trial judge's failure in a capital sentencing proceeding to find an aggravating circumstance did not amount to an acquittal of that circumstance for double jeopardy purposes. 476 U.S. 147, 155, 90 L. Ed. 2d 123, 132 (1986). This is so, the Court said, because "the judge's finding of any particular aggravating circumstance does not of itself 'convict' a defendant (i.e., require the death penalty), and the failure to find any particular aggravating circumstance does not

'acquit' a defendant (i.e., preclude the death penalty)." *Id.* at 156, 90 L. Ed. 2d at 132-33.

The petitioners in *Poland* were convicted by an Arizona jury of first-degree murder and sentenced to death by a trial judge in a separate capital sentencing proceeding. At the capital sentencing proceeding, the prosecution argued that two statutory aggravating circumstances were present, to wit: that the petitioners had committed the offense for pecuniary gain and that they had committed the offense in an especially heinous, cruel, or depraved manner. The trial judge failed to find the pecuniary gain circumstance but did find the especially heinous, cruel, or depraved aggravating circumstance and ultimately sentenced the petitioners to death. On appeal, the Arizona Supreme Court found insufficient evidence to support a finding of the aggravating circumstance that the murder was especially heinous, cruel, or depraved but further stated that the trial court "mistook the law" when it did not find the pecuniary gain aggravating circumstance. The Arizona Supreme Court reversed and remanded for a new trial, at which the petitioners were again convicted of first-degree murder and sentenced to death.

In the second capital sentencing proceeding, the prosecution offered evidence of three aggravating circumstances, including the especially heinous, cruel, or depraved circumstance and the pecuniary gain circumstance. The trial judge found all three to exist and sentenced the petitioners to death. On a second appeal, the Arizona Supreme Court again found the evidence insufficient to support the heinous, cruel, or depraved aggravator but sufficient to support the pecuniary gain circumstance. The Arizona Supreme Court then independently weighed the remaining aggravating and mitigating circumstances and concluded that death was the appropriate punishment for each petitioner. The issue before the United States Supreme Court in *Poland* was whether the Double Jeopardy Clause barred reimposition of the death penalty upon the petitioners. The Supreme Court held that it did not. *Id.* at 151, 90 L. Ed. 2d at 130.

The Supreme Court reasoned in *Poland* that since neither the sentencing judges nor the reviewing appellate court had held that the prosecution had failed to prove that the petitioners deserved the death penalty, there was nothing similar to an acquittal. The Court rejected the petitioners' argument that a capital sentencer's failure to find a particular aggravating circumstance constitutes an acquittal of that circumstance for double jeopardy purposes. *Id.* at 155, 90 L. Ed. 2d at 132.

The Court further stated:

> *Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" *that the death penalty is appropriate.* We are not prepared to extend *Bullington* further and view the capital sentencing hearing as a set of minitrials on the existence of each aggravating circumstance. Such an approach would push the analogy on which *Bullington* is based past the breaking point.

*Id.*

In the instant case, the State argues that our interpretation of double jeopardy principles in *Silhan* must now be modified in light of the United States Supreme Court's decisions in *Bullington* and *Poland.* We agree. In accordance with the principles discussed in those cases, we conclude that jeopardy attaches in a capital sentencing proceeding for purposes of double jeopardy analysis only after there has been a finding that no aggravating circumstance is present. To the extent that our opinion in *Silhan* can be read as supporting any other rule, it is inconsistent with the more recent decision of the United States Supreme Court in *Poland* and must no longer be considered authoritative on this point.

In the present case, neither the jury at the first capital sentencing proceeding nor the jury at the second capital sentencing proceeding found that no aggravating circumstance existed. To the contrary, each of those juries found at least one aggravating circumstance to exist and recommended a sentence of death. Therefore, principles of double jeopardy did not prevent the trial court from submitting this case to the jury at defendant's third capital sentencing proceeding for its consideration of all aggravating circumstances supported by evidence adduced at that third capital sentencing proceeding for the jury's determination as to whether death or life imprisonment was the appropriate penalty in this case.

[2] The trial court properly submitted as an aggravating circumstance at the third capital sentencing proceeding that defendant had committed the murder while engaged in the commission of a rape. This is so because the evidence introduced at that third capital sentencing proceeding supported this aggravating circumstance. Whether the evidence at the first or second capital sentencing proceeding would have supported the submission of this aggravating circumstance or whether the trial court in either of those prior capital

sentencing proceedings in fact submitted this aggravating circumstance is irrelevant. Neither jury in the two prior capital sentencing proceedings had found that no aggravating circumstance existed, and neither recommended a sentence of life imprisonment. Therefore, double jeopardy considerations did not come into play in defendant's third capital sentencing proceeding resulting in this appeal.

We conclude that the trial court did not err in denying defendant's motion *in limine* or in submitting the aggravating circumstance that defendant murdered the victim during the course of raping her. This assignment of error is overruled.

[3] By another assignment of error, defendant contends that the trial court erred by submitting to the jury the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a kidnapping. He argues that this aggravating circumstance, as submitted to the jury, was not supported by the evidence. Specifically, defendant contends that at his third capital sentencing proceeding, the State failed to produce evidence that he kidnapped the victim for the purpose of terrorizing her. Thus, defendant argues that the trial court erred by submitting this as an aggravating circumstance. We disagree.

Defendant was indicted for first-degree kidnapping on 3 March 1986. The indictment charged defendant with forcibly confining, restraining, and removing the victim "for the purpose of facilitating the flight of [defendant] following the commission of a felony . . . and for the purpose of terrorizing [the victim]." On 7 April 1986, defendant pled guilty to first-degree kidnapping and first-degree murder. The trial court sentenced defendant to forty years' imprisonment for the kidnapping.

At defendant's first two capital sentencing proceedings, the State submitted kidnapping as an aggravating circumstance, using the language that the kidnapping had been done for the unlawful purpose of "facilitating flight" or "avoiding lawful arrest." Both sentencing juries found this aggravating circumstance to exist. At the third capital sentencing proceeding, the State shifted its theory of unlawful purpose from "facilitating flight following commission of a felony" to "terrorizing the person so confined, restrained or removed." Defendant argues that the State failed to meet its evidentiary burden on the theory supporting this aggravating circumstance. This argument is without merit.

When a defendant pleads guilty to a charge contained in an indictment, "[t]he question of which theory, if there is more than one available, upon which defendant might be guilty does not arise." *Silhan*, 302 N.C. at 263, 275 S.E.2d at 478. The fact that a defendant pleads guilty means that the State does not have to invoke any particular legal theory upon which to convict him. *Id.* On 7 April 1986, defendant pled guilty to kidnapping the victim. As we stated in *Silhan*, once a defendant pleads guilty to a charge, it is irrelevant which theory the State later uses as a basis for the submission of this aggravating circumstance. *Id.* Thus, we conclude that the trial court did not err in submitting this aggravating circumstance.

Moreover, the State's evidence at the third capital sentencing proceeding from which defendant now appeals satisfied the State's burden of proof as to this aggravating circumstance. The State presented various confessions by defendant that he had kidnapped the victim prior to killing her, and defense counsel acknowledged on several different occasions that defendant had kidnapped the victim. The State's evidence also tended to show that the sixteen-year-old victim was clearly subjected to psychological terror prior to her death. Defendant forcibly took her from her home, drove her around in a car for over two hours, took her to a secluded area, and raped her. He then placed her in the trunk of a car while he dug a shallow grave, before he strangled and stabbed her. The jury could reasonably infer from such evidence that defendant intended to terrorize the victim by kidnapping her.

**[4]** In support of another assignment of error, defendant argues that the trial court erred by refusing to submit a nonstatutory mitigating circumstance. Defendant requested that the trial court submit as a mitigating circumstance that "[defendant's] voluntary confession may well have saved Woody Jones' life and prevented the State of North Carolina from executing an innocent man." The trial court denied the request on the grounds that it was cumulative of other mitigating circumstances already submitted regarding defendant's confession. These mitigating circumstances included the following:

(9) The defendant's confession led to the dismissal of First Degree Murder charges then pending against Woody Jones, an innocent man.

. . . .

(10) The conduct of defendant in coming forward and confessing to this crime after another man had been charged assisted in the proper administration of justice in Davidson County.

. . . .

(11) The defendant's confession resulted in a tremendous burden being lifted from Woody Jones and his family.

The jury found these three and other related mitigating circumstances to exist and to have mitigating value. Nevertheless, defendant argues that the trial court committed reversible constitutional error in rejecting the requested mitigating circumstance. We disagree.

A trial court does not err in rejecting mitigating circumstances that are subsumed in other mitigating circumstances. *State v. McLaughlin*, 341 N.C. 426, 447, 462 S.E.2d 1, 12 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996); *see also State v. Skipper*, 337 N.C. 1, 55-56, 446 S.E.2d 252, 282-83 (1994) (no error where trial court fails to submit a nonstatutory mitigating circumstance that was subsumed in a statutory mitigating circumstance), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). We conclude that defendant's proposed mitigating circumstance was subsumed in the circumstances submitted. The mitigating circumstances submitted as numbers (9), (10), and (11) served as vehicles by which the jury could fully consider defendant's confession and its impact on the case against Woody Jones. Thus, we conclude that the trial court did not err in refusing to submit the requested mitigating circumstance. This assignment of error is overruled.

[5] By another assignment of error, defendant argues that the trial court's instructions precluded consideration of mitigating circumstances which had not been unanimously found by the jurors. He contends that this violated the holding in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). We disagree.

The trial court's instructions on Issue Three were as follows:

Issue Three is, "Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found is, or are, sufficient to outweigh the mitigating circumstance or circumstances found by you." If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances.

When deciding this issue, each juror may consider any miti-
gating circumstance or circumstances that the *jurors determine*
to exist by a preponderance of the evidence in Issue Two.

(Emphasis added.)

Defendant contends that these instructions could have left the
jurors with the mistaken notion that they had to consider only those
mitigating circumstances unanimously found by the jury at Issue Two
when deciding Issue Three. This assertion is misplaced. When these
instructions are viewed in context with the instructions for Issue
Two, it is clear the trial court's instructions neither express nor imply
a unanimity requirement for considering mitigating circumstances.
The trial court gave the following Issue Two instructions:

Now Ladies and Gentleman, if you will turn back now to Page
Two. Following the second issue, you will see in all capital letters
some instructions which indicate that before you answer Issue
Two, you should consider each of the mitigating circumstances
that I have just been over with you, and in the space after each
mitigating circumstance *write yes if one or more of you finds
the circumstance* by a preponderance of the evidence. *Write no
if none of you find the mitigating circumstance.* If you write
yes in one or more of the spaces following the mitigating circum-
stances, then you should write yes in the space after Issue Two as
well. If you write no in all of the spaces following the mitigating
circumstances, then you should write no in the space after Issue
Two.

(Emphasis added.) These instructions make it clear that each juror
could find any submitted mitigating circumstance to exist. Moreover,
they plainly state that unanimity is not required for a finding of any
mitigating circumstance. The difference between the portion of the
trial court's Issue Three instructions which defendant finds objec-
tionable and the pattern jury Issue Three instructions is minimal. The
pertinent portion of the pattern jury instructions reads as follows:

When deciding this issue, each juror may consider any mitigating
circumstance or circumstances that the *juror determined* to
exist . . . .

N.C.P.I.—Crim. 150.10, at 43 (1996) (emphasis added).

We cannot discern whether the trial court's Issue Three instruc-
tions merely contained a *lapsus linguae* in pluralizing "juror" where

the word should have been singular or whether a mistake was made in the transcript. In *State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied,* 513 U.S. 1089, 130 L. Ed. 2d 650 (1995), the trial court had instructed in the second paragraph of Issue Three as follows:

> When deciding this issue, each juror may consider any mitigating circumstance or circumstances that the *jury* determined to exist by a preponderance of the evidence in Issue Two.

*Id.* at 122, 443 S.E.2d at 328 (emphasis added). We concluded in *Robinson* that whether the use of the word "jury" as opposed to the word "juror" was a *lapsus linguae* by the trial court or a mistake in the transcription of the instruction, any error was harmless beyond a reasonable doubt. *Id.* We conclude likewise in the instant case. As in *Robinson,* we conclude here that the jury in the instant case was

> clearly and unambiguously instructed for each of the . . . mitigating circumstances submitted in Issue Two that only one or more of the jurors was required to find that the mitigating circumstance existed and that it was deemed mitigating.

*Id.* at 123, 443 S.E.2d at 328. No juror was precluded in Issue Three from considering mitigating evidence that he or she found in Issue Two. As defendant's counsel made no objection to the Issue Three instructions at trial, our review is therefore limited to one for plain error. *State v. Payne,* 337 N.C. 505, 526-29, 448 S.E.2d 93, 106-07 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 292 (1995). We find none.

[6] Defendant also contends that he was denied his Sixth Amendment right to the effective assistance of counsel by his trial counsel's failure to object to the Issue Three instruction. We disagree. The United States Supreme Court held in *Strickland v. Washington* that in order to prevail on an ineffective assistance of counsel claim, a defendant must satisfy a two-pronged test. 466 U.S. 668, 80 L. Ed. 2d 674 (1984). As our statutorily enacted test for prejudice mirrors the *Strickland* test, N.C.G.S. § 15A-1443(a) (1988), we adopted the test in *Strickland* as our own standard by which to measure ineffective assistance of counsel claims. *State v. Braswell,* 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985). To satisfy this test, a defendant must first show that counsel's performance was so deficient that counsel was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693. A defendant must then show that counsel's deficient performance

deprived him or her of a fair trial. *Id.* By this test, defendant was not denied the effective assistance of counsel. The Issue Three instructions were sufficiently like the pattern instructions, and did not require the jurors to consider only those mitigating circumstances unanimously found by the jury. Counsel was not deficient in failing to object to the instructions. In any event, defendant has not made any showing that counsel's performance deprived him of a fair capital sentencing proceeding. This assignment of error is overruled.

[7] By another assignment of error, defendant argues that the trial court violated the federal and state constitutional prohibitions against double jeopardy by denying his motion for imposition of a life sentence. Before the capital sentencing proceeding at issue—defendant's third—defendant moved the trial court to impose a life sentence because of the prosecutor's allegedly persistent misconduct in the prior capital sentencing proceeding. The trial court denied the motion. Defendant contends that because this Court found prosecutorial misconduct in defendant's second capital sentencing proceeding, defendant's death sentence should be vacated, and he should be sentenced to life imprisonment. We disagree with defendant's contention.

The United States Supreme Court has noted that double jeopardy principles could bar a state from retrying a criminal defendant when prosecutorial misconduct resulted in a mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 679, 72 L. Ed. 2d 416, 427 (1982); *United States v. Dinitz*, 424 U.S. 600, 611, 47 L. Ed. 2d 267, 276 (1976). The Court in *Kennedy* held that circumstances under which this may happen are limited to those cases in which the conduct giving rise to a defendant's motion for a mistrial was *intended* to provoke the motion for a mistrial. *Kennedy*, 456 U.S. at 679, 72 L. Ed. 2d at 427.

No mistrial was granted at the second capital sentencing proceeding in this case. This Court vacated the death sentence and remanded for a new capital sentencing proceeding based on the "persistent misconduct" of the prosecutor during defendant's second capital sentencing proceeding. *Sanderson*, 336 N.C. at 21, 442 S.E.2d at 45. That is simply not the equivalent of a mistrial. Moreover, although defendant contends that the prosecutor's misconduct was intentional, this Court did not find evidence of bad faith in remanding for a new sentencing proceeding. *Id.* Thus, the principles discussed in *United States v. Dinitz* and *Oregon v. Kennedy* have no applicability here. This assignment of error is overruled.

Defendant also raises as preservation issues the following four issues: (1) the trial court improperly refused to permit defendant to question prospective jurors about their conception of parole eligibility on a life sentence, (2) the trial court improperly refused to instruct the jury that it could consider life without parole as the sentencing alternative to death, (3) the trial court improperly defined the burden of proof applicable to mitigating circumstances by using the vague and ambiguous terms "satisfaction" and "satisfy you," and (4) the trial court's use of the term "may" in sentencing Issues Three and Four made consideration of proven mitigating circumstances discretionary with the sentencing jurors. We have previously considered and rejected defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule each of these assignments of error.

[8] Having concluded that defendant's capital sentencing proceeding was free of prejudicial error, we now turn to our statutory duty as codified in N.C.G.S. § 15A-2000(d)(2) and reserved exclusively for this Court in capital cases. We must ascertain whether (1) the record supports the jury's findings of the aggravating circumstances on which the death sentence was based; (2) the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1996). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We turn then to our final statutory duty of proportionality review.

In the case *sub judice*, defendant pled guilty to first-degree murder. The jury found three aggravating circumstances; that defendant committed the murder to prevent arrest or effect escape, N.C.G.S. § 15A-2000(e)(4); that defendant committed the murder while he was engaged in the commission of kidnapping, N.C.G.S. § 15A-2000(e)(5); and that defendant committed the murder while he was engaged in the commission of rape, also N.C.G.S. § 15A-2000(e)(5). The jury found neither of the statutory mitigating circumstances submitted to exist. Of the ten nonstatutory mitigating circumstances submitted, the jury found nine to exist.

**STATE v. SANDERSON**

[346 N.C. 669 (1997)]

In conducting our proportionality review, it is appropriate to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). None of these seven cases is factually similar to the present case; none of these cases involved a victim of first-degree murder who was also kidnapped and sexually assaulted.

This case is also distinguishable from the cases in which we have found the death penalty disproportionate in that the murder was physically and psychologically brutal. The victim was only sixteen years old. She was at home, sick and alone, when defendant attempted to break into the house. She was then kidnapped from her home and driven around for at least two hours before she was taken to an isolated area where she was raped, choked, and stabbed to death. The evidence tended to show that the young victim was subjected to a prolonged period of terror and anguish while defendant "decided what he was going to do with her." Finally, and most reprehensible, is the fact that before defendant killed the victim, but just after he raped her, he placed her in the trunk of his car while he dug her shallow grave. The terror the victim must have experienced in this regard is staggering, and it clearly distinguishes this case from those in which we have found the death penalty to be disproportionate.

It is also proper for this Court to compare this case with cases in which we have found the death penalty to be an appropriate punishment. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. This Court has often found a death sentence proportionate where the defendant sexually assaulted the victim of first-degree murder. *See State v. Perkins*, 345 N.C. 254, 290, 481 S.E.2d 25, 42 (1997); *State v. Payne*, 337 N.C. 505, 537, 448 S.E.2d 93, 112; *State v. Lee*, 335 N.C. 244, 294, 439 S.E.2d 547, 574, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994).

This case is also comparable to the witness elimination cases in which this Court upheld sentences of death. The victim was murdered to prevent her from identifying the defendant as the perpetrator of a break-in at her home. Similarly, in *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983), and *State v. Lawson*, 310 N.C. 632, 314 S.E.2d 493 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985), the defendants were motivated to murder their victims in order to avoid detection or arrest. We upheld the death sentences in both of these cases. *See also State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985) (sole purpose of murder was witness elimination—death sentence not disproportionate), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373. Killing another human being for the purpose of eliminating him or her as a witness reveals a particularly callous and depraved heart.

The evidence tended to show that defendant subjected the victim in this case to extreme terror. The evidence tended to show that the victim was raped prior to being choked and stabbed and that defendant stabbed her because he was not sure she was dead after he choked her. Moreover, defendant killed the victim in order to eliminate her as a potential witness after she saw him attempting to rob her home. As we said in *Oliver*, "[t]he motive of witness elimination lacks even the excuse of emotion." 309 N.C. at 375, 307 S.E.2d at 335. This senselessly brutal treatment of another human being and the reprehensible motivation behind it convince us that the death penalty is not a disproportionate punishment for this crime and this defendant.

For the foregoing reasons, we hold that defendant received a fair capital sentencing proceeding, free of prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.