STATE OF NORTH CAROLINA v. ROBIN HELMS

No. 9A87

(Filed 5 May 1988)

**Criminal Law §§ 33, 35— subornation of testimony against defendant—evidence of motive**

In a prosecution for sexual offenses allegedly committed upon defendant's stepsons, defendant's evidence that she, her husband and the oldest stepson consulted a lawyer for the purpose of bringing an action to obtain custody of the stepsons from their natural mother shortly before the mother accused defendant of sexual offenses against them was relevant and admissible under N.C.G.S. § 8C-1, Rule 401 to support and make more plausible defendant's evidence that the natural mother suborned the boys' testimony, and the trial court's exclusion of such evidence was prejudicial error since it is reasonably

possible that there would have been a different result at trial had the evidence not been excluded. N.C.G.S. § 15A-1443(a).

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Davis, J.*, at the 26 January 1987 Criminal Session of Superior Court, IREDELL County, upon defendant's conviction of two first degree sexual offenses. Heard in the Supreme Court 15 March 1988.

*Lacy H. Thornburg, Attorney General, by Elizabeth G. Mc-Crodden, Associate Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

EXUM, Chief Justice.

In this case defendant was charged with committing sexual offenses upon two of her stepsons. She denied the charges, claiming that the boys' natural mother suborned their testimony. The sole question we address on appeal is whether the trial court committed reversible error when it precluded defendant from introducing evidence that shortly before she was accused of committing sexual offenses she, one of her stepsons, and her husband, the boys' natural father, consulted a lawyer for the purpose of trying to obtain custody of the boys from their natural mother. We hold exclusion of this evidence constituted reversible error.

I.

The state's evidence tended to show that on 17 February 1986 the Iredell Department of Social Services received a report from Diane Helms Rogers alleging that defendant sexually abused Rogers' two oldest sons. A social worker investigated the report. During the investigation both boys indicated on anatomically correct drawings that defendant forced them to engage in vaginal intercourse and cunnilingus.

The younger victim, age seven at the time of the alleged offense, testified that during the 1985 Christmas season he and his brothers visited their father and defendant for an overnight stay. He stated that while his father was at work defendant told him to get into the bathtub with her and "place his bottom private part on her bottom private part." By this he meant defendant asked

him to insert his penis in her vagina. He did as directed. Defendant then took him into the bedroom and again asked him to do the same thing. She then called his nine-year-old brother into the bedroom to demonstrate how to have intercourse. The older brother complied. Defendant then asked the older brother to hold up a mirror while the younger one imitated him. Defendant then directed both children to perform cunnilingus. After performing these acts the younger brother dressed and left, locking the door behind him.

The older brother corroborated his younger brother's account of the alleged offenses, adding that after the younger brother left he stayed in the room doing "the same things that happened before [my brother] left."

Defendant put on evidence demonstrating that on several occasions before trial the children had recanted their story. The boys' paternal grandfather, W. L. Helms, testified that sometime after Diane Rogers reported the incident the younger brother told him that "there wasn't a word of it so." Herman Rogers, Diane Rogers' father-in-law, testified that when he questioned the boys the younger brother declared "[i]t ain't so," and went on to say that their natural mother "put them up to it." Richard Helms, the boys' natural father, testified that his oldest son also recanted, telling him that his mother asked him "to tell lies on Robin that we sexually assaulted by her. [sic]" Carlton Wilkerson, the social worker to whom the Helms brothers initially made allegations, testified that the older Helms boy told him his original story was not true. Later, at a third interview with Wilkerson, the older brother reaffirmed his original allegations that defendant forced him to perform intercourse and cunnilingus.

Defendant, testifying on her own behalf, denied that she participated in any sexual acts with her stepsons. According to her testimony she was never alone with the boys during the Christmas season. She did not own a hand-held mirror, and the only mirrors in the trailer would have been too heavy for a young child to lift. There was no lock on her bedroom door. Finally, defendant described extensive orthopedic surgery she had undergone just before the 1985 Christmas season to remove malfunctioning stainless steel pins from the sides of both hips. Defendant was hospitalized for the surgery until 29 November 1985 and was

unable to do anything for herself until a few days before Christmas. Even then she needed crutches and was instructed to keep the stitches closing the surgical incisions dry.

## II.

Defendant contends the trial court committed reversible error in excluding evidence that she, her husband and the oldest stepson consulted a lawyer, Roger Edwards, for the purpose of bringing an action for custody of the boys against Diane Rogers shortly before Rogers accused defendant of sexual offenses against them. She argues this evidence was relevant because it tended to establish why Ms. Rogers might have suborned her sons' testimony and was therefore admissible under N.C.G.S. § 8C-1, Rule 401. We agree.

The trial court permitted defendant to demonstrate that she, her husband and stepson went to see Mr. Edwards approximately two weeks before the Department of Social Services received a complaint about defendant; however, it prohibited her from showing that they sought Mr. Edwards' assistance for the purpose of bringing an action to gain custody of the Helms boys. Defense counsel asked the older boy "[d]o you remember talking to a lawyer about whether or not you wanted to go live with your father?" He said "yes," whereupon the state objected and moved to strike. The court sustained the state's objection and granted its motion, stating "[m]embers of the jury, as to whether or not he may have talked to a lawyer about those matters is immaterial. You will disregard it." On defendant's direct examination she testified that she went to see a lawyer; however, she was forbidden to answer the question "[w]hat was the purpose of the appointment." A similar exchange occurred during the direct examination of Richard Helms. Finally, the court conducted a lengthy *voir dire* when defendant called Mr. Edwards to testify after which it concluded "as to the reason Mr. Helms was in his office and what he was doing, as to that I rule that that is not competent." During this *voir dire* Mr. Edwards testified that the Helmses consulted him about bringing an action to obtain custody of the Helms boys from Diane Rogers.

We hold the trial court erred in excluding evidence that the purpose for which defendant, her husband and stepson consulted a lawyer was to bring an action for the custody of the Helms boys

against Diane Rogers. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1986). This evidence tends to support and make more plausible defendant's evidence that Diane Rogers suborned the boys' testimony. Whatever antipathy might naturally exist between a natural mother and a stepmother would be exacerbated when the stepmother threatens the natural mother with loss of her children's custody.

The state contends the evidence at issue is not relevant because there is no evidence that Diane Rogers knew the purpose of the consultation between Mr. Edwards and the Helmses.

It was not necessary for defendant to prove that Diane Rogers knew the purpose of the consultation with Mr. Edwards for her to introduce evidence of the consultation's purpose. Evidence of the consultation's purpose, coupled with the natural relationship between a mother and her children, could lead a jury reasonably to infer that the Helms boy told Diane Rogers about that purpose. It is reasonable to infer that a young boy would tell his mother that he and his father went to talk to a lawyer about whether he could live with his father instead of with his mother.

We also hold that under N.C.G.S. § 15A-1443(a) the trial court's error in precluding defendant from introducing evidence of the purpose underlying the consultation with Mr. Edwards unfairly prejudiced defendant. Under this statute, reversible error occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." N.C.G.S. § 15A-1443(a) (1983). The defense in this case was premised largely on the theory that Diane Rogers caused her sons to make up false charges against defendant. Such a theory, divorced from evidence that defendant and Richard Helms were planning to institute a custody action against Diane Rogers, is not nearly so plausible as it would be in the presence of such evidence. This case boils down to which witnesses the jury chooses to believe. The state's case is strong, but so is the defendant's defense. Thus, we conclude that had this evidence not been erroneously excluded it is reasonably possible

there would have been a different result at trial.* The result, therefore, is a

New trial.

---

* Defendant raises other assignments of error which, she contends, necessitate that she receive a new trial. Because these errors are not likely to arise at the new trial we decline to address these arguments.