STATE OF NORTH CAROLINA v. FLOR PEREZ, III

No. COA98-1383

(Filed 16 November 1999)

**1. Constitutional Law— effective assistance of counsel—jury argument—concession of guilt**

Defendant did not receive ineffective assistance of counsel in a first-degree murder case when his trial counsel conceded to the jury in opening and closing arguments that defendant was responsible for the victim's death and was guilty of some offense less than first-degree murder because: (1) the trial court ques-

tioned defendant under oath and found that defendant knowingly, willingly, and with clear understanding allowed his attorneys to admit to the jury that his acts resulted in the death of the victim; and (2) counsel's concession of defendant's guilt of some offense less than first-degree murder was a reasonable trial strategy.

2. **Homicide— testimony of medical examiner—strangulation—corroboration—relevancy to premeditation, deliberation, and intent**

The trial court did not err in a first-degree murder case by admitting testimony of the medical examiner that it usually takes several seconds to maybe a minute for a victim to die from strangulation, but it can take longer than a minute for a victim to die if he is engaged in a struggle, because the medical examiner's testimony: (1) was corroborative of defendant's statement that he strangled the victim for a few minutes, and an accomplice's testimony that it took the victim approximately ten minutes to die with defendant eventually stomping on the victim's neck because defendant's hands were tired; and (2) was relevant to the issues of premeditation, deliberation, and intent because the testimony revealed defendant had a substantial opportunity to cease the attack before the victim's death.

3. **Evidence— letter stating killed before—threat to do it again—not predisposition to violence—relevancy—admission—intent to kill**

The trial court did not err in a first-degree murder case by admitting into evidence portions of a letter which defendant wrote to his girlfriend from jail several months after the victim was killed, stating he would hunt her estranged husband down and really kill somebody since he did it once and it did not take too much to have one more under his belt, because the statements in defendant's letter were not admitted in violation of N.C.G.S. § 8C-1, Rule 404(b) to show defendant's predisposition to act violently, but instead were relevant to an admission with respect to the victim's death and also to show defendant's deliberate intent to kill.

4. **Criminal Law— closing argument—four to five minute period of silence—failed to object—failed to show grossly improper**

The trial court did not err in failing to intervene ex mero motu in a first-degree murder case when the prosecutor observed a

STATE v. PEREZ

[135 N.C. App. 543 (1999)]

four to five minute period of silence during her closing argument because: (1) defendant did not object to the argument at trial; and (2) defendant did not show the prosecutor's conduct was grossly improper since the evidence indicates defendant's strangulation of the victim lasted as long as ten minutes.

**5. Criminal Law— jury request for evidence—trial court exercised discretion and did not abuse discretion**

In a first-degree murder case, the trial court did not abuse its discretion or fail to exercise its discretion in its response to the jurors' request to review certain evidence because: (1) the trial court could consider the court reporter's absence as a factor in exercising its discretion since it is permissible to weigh the time, practicality, and difficulty involved with granting the request; (2) the trial court's statement for the record that it is allowing or denying a jury's request to review testimony in its discretion is presumed to be in accordance with N.C.G.S. § 15A-1233; and (3) the trial court explained that allowing the request might lend undue importance to the portions of the evidence reviewed without giving equal importance to the other evidence in the case, and it was the jurors' duty to recall and consider all of the evidence.

Appeal by defendant from judgments entered 7 May 1997 by Judge Jack A. Thompson in Wake County Superior Court. Heard in the Court of Appeals 20 September 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janet Moore, for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from judgments entered upon his convictions of first-degree murder, credit card theft, and felonious larceny of an automobile.

Summarized only to the extent necessary to an understanding of the issues raised in this appeal, the State's evidence at trial tended to show that defendant and his girlfriend, Michelle Locklear, came to Raleigh in September 1995. Locklear was a parole violator from Maryland. Shortly after coming to Raleigh, defendant and Locklear became acquainted with Charles Murphy, a 63 year old retired vet-

eran. Locklear told Murphy that she could not find work due to her criminal record and he offered to pay her to clean his house. After Murphy made sexual advances toward Locklear, she told defendant, who confronted Murphy. Murphy claimed that Locklear had made advances toward him. Subsequently, without defendant's knowledge, Locklear again visited Murphy, undressed for him, and allowed him to kiss her neck and breasts in exchange for $20.

Sometime thereafter, Locklear learned that her parole officer knew she was in Raleigh. She and defendant discussed whether she should turn herself in or whether they should leave Raleigh. Locklear told defendant about the sexual encounter with Murphy. Defendant and Locklear then made a plan to kill Murphy and use his car and money to leave Raleigh. They discussed their plan several times during December, 1995.

On 2 January 1996, pursuant to their plan, Locklear called Murphy and told him that defendant was out of town and that she did not want to stay by herself. Murphy invited Locklear to come to his house; she told him to keep the porch light off. Locklear and defendant walked together to Murphy's house and Locklear knocked on the door. Murphy answered the door, clad only in his underwear. Locklear entered the house, followed by defendant, whose face was obscured by a hood. Murphy turned and started walking towards the back of the house. Defendant grabbed Murphy from behind, pulled him down to the floor, and choked him with his hands for approximately 10 minutes. Defendant complained that his hands were getting tired, stood up, and stomped on Murphy's neck. Locklear testified that she heard something pop. Locklear took Murphy's keys and wallet and she and defendant dragged Murphy's body out of the house and put it into the trunk of his car. They drove to Johnston County, where they disposed of the body in a wooded area. They then drove Murphy's car to Norwich, Connecticut, using his credit cards to pay for their trip. They were arrested in Norwich.

After they were arrested, both Locklear and defendant made statements to the police. Defendant initially stated that he had acted alone and had gone to Murphy's house to confront him about his involvement with Locklear. He said that he had killed Murphy in self-defense because he thought Murphy "was going for his gun." After being advised that Locklear had made a statement in which she had admitted complicity, defendant gave a second statement in which he acknowledged Locklear's involvement and said that he had not

STATE v. PEREZ

[135 N.C. App. 543 (1999)]

intended to kill Murphy but wanted him to stop making advances toward Locklear.

Defendant did not testify nor did he offer evidence on his own behalf.

___

Defendant contends he was denied a fair trial in four respects. First, he contends his trial counsel conceded his guilt to the jury without his knowing and voluntary consent in violation of rights guaranteed him by the North Carolina and United States Constitutions. In addition, he contends the trial court erred in its rulings admitting certain evidence and in permitting the prosecutor to argue such evidence to the jury. Finally, he contends the trial court failed to exercise its discretion, or abused such discretion, in responding to the jurors' request to review certain evidence. For the following reasons, we reject defendant's contentions and conclude that he received a fair trial.

I.

[1] Defendant first contends that his constitutional rights were violated when his trial counsel conceded to the jury, in opening and closing arguments, that defendant was responsible for Murphy's death and was guilty of some offense less than first degree murder. Defendant argues that the trial court did not obtain his knowing, intelligent, and voluntary consent to this concession of guilt and that the actions of his trial counsel in making the concession amounted to ineffective assistance of counsel.

A.

A concession of guilt by a defendant's counsel has the same practical effect as a guilty plea, because it deprives the defendant of his right against self-incrimination, the right of confrontation and the right to trial by jury. *State v. Harbison,* 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied,* 476 U.S. 1123, 90 L.Ed.2d 672 (1986). Therefore, a decision to make a concession of guilt as a trial strategy is, like a guilty plea, a decision which may only be made by the defendant and a concession of guilt may only be made with the defendant's consent. *Id.* Due process requires that this consent must be given voluntarily and knowingly by the defendant after full appraisal of the consequences, *see Boykin v. Alabama,* 395 U.S. 238, 23 L.Ed.2d 274 (1969), and a clear record of a defendant's consent is required. *State v. House,* 340 N.C. 187, 456 S.E.2d 292 (1995). We reject, however,

defendant's argument that an acceptable consent requires the same formalities as mandated by statute for a plea of guilty. *See* N.C. Gen. Stat. § 15A-1022(a). Our Supreme Court has found a knowing consent to a concession of guilt in compliance with *Harbison* where the record showed the defendant was advised of the need for his authorization for the concession, defendant acknowledged that he had discussed the concession with his counsel and had authorized it, and the defendant thereafter acknowledged that his counsel had made the argument desired by him. *State v. McDowell*, 329 N.C. 363, 407 S.E.2d 200 (1991).

Prior to jury selection in the present case, defendant's counsel apprised the court of the possibility that a *Harbison* issue would arise at trial. Upon inquiry of defendant, the trial court determined that he had not conferred with his counsel about the matter and had not given his consent to an admission that he had caused the victim's death. The trial court advised defendant to confer with counsel about the matter and ruled that counsel could not admit defendant's culpability without his consent. Later, before jury selection had begun, the following colloquy occurred outside the presence of the prospective jurors:

MR. GASKINS: I think also, Your Honor, if you'd like we can return to the issues which we raised earlier dealing with the Harbinger [sic] case and our intention to concede certain facts to the jury.

BY THE COURT:

Q. Okay. Mr. Perez, you're still under oath. I'm going to talk back with you concerning what your attorney has told the Court.

Have you now talked again with your attorney concerning their presenting to the jury, either through questions, either through argument or evidence that an admission that your acts resulted in the death of the victim in this case?

A. Yes.

Q. Have you considered the effect of the attorneys' telling the jury that you are in fact responsible for the death of the victim?

A. Yes, sir.

Q. Have you given your attorneys permission to present that information to the jury?

A. Yes.

STATE v. PEREZ

[135 N.C. App. 543 (1999)]

Q. And you have conferred with counsel about that and understand what they intend to do; is that correct?

A. Yes, I have.

Q. Do you feel it—based upon your conversations with your attorneys, do you feel it is in your best interest for your attorneys as part of your defense to admit that your actions resulted in the death of the victim?

A. Yes, sir.

The trial court found that defendant "knowingly, willingly and with clear understanding of the effect, has allowed his attorneys to admit to the jury during the course of this trial that his acts resulted in the death of the victim in this case."

After all of the evidence had been presented, defendant's counsel again notified the court of his intent to admit, in his argument to the jury, defendant's guilt of some offense less than first degree murder. Outside the presence of the jurors, the trial court addressed the defendant as follows:

THE COURT: Mr. Perez, I previously talked with you concerning this issue. Your attorneys have told me in open court that they intend to admit culpability or wrongdoing on your part relative to the homicide of the victim in this case.

MR. PEREZ: Yes, sir.

THE COURT: Do you understand that that argument to the jury is, in effect, an admission of guilt—

MR. PEREZ: Yes. Sir, I do.

THE COURT: —of some offense?

MR. PEREZ: Yes, sir, I do.

THE COURT: Have you conferred with your attorneys concerning that?

MR. PEREZ: Yes, sir, I have.

THE COURT: And have you given them your permission to make that argument—

MR. PEREZ: Yes, sir.

THE COURT:  —an admission to the jury?

MR. PEREZ:  Yes, sir, I do.

THE COURT:  No one has coerced you to do that; is that right?

MR. PEREZ:  No, sir.

THE COURT:  And this is of your own free will; is that correct?

MR. PEREZ:  Yes, sir.

We believe the foregoing establishes the same clear record of defendant's understanding consent for his counsel to admit some degree of culpability less than first degree murder as was found in *McDowell*. Defendant testified under oath that he understood the consequences of the concession, had discussed it with his attorney, and believed that the strategy was in his best interest.

## B.

Nevertheless, defendant argues that his counsel's strategy to concede guilt was so unreasonable as to constitute ineffective assistance of counsel. Because we agree with the trial court's determination that defendant knowingly consented to the concessions made by his counsel, we review his contentions with respect to ineffective assistance of counsel under the traditional ineffective assistance of counsel test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 82 L.Ed.2d 864 (1984), and adopted in this State by our Supreme Court in *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). *See also McDowell*, 329 N.C. 363, 407 S.E.2d 200. To establish that his right to effective assistance of counsel has been violated, a defendant must show, first, that his counsel's performance was so deficient that counsel was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and, second, the deficient performance deprived defendant of a fair trial. *State v. Sanderson*, 346 N.C. 669, 684-85, 488 S.E.2d 133, 141 (1997) (quoting *Strickland*, 466 U.S. 668, 80 L.Ed.2d 674.)

The concession of guilt of some offense less than first degree murder in this case was made in furtherance of counsel's strategy to argue "imperfect" self-defense. Defendant apparently contends his counsel unreasonably abandoned a "perfect" self-defense strategy, which would have totally exonerated defendant.

In order to prevail on a theory of perfect self-defense, a defendant must show the existence of four elements:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Williams*, 342 N.C. 869, 873, 467 S.E.2d 392, 394 (1996) (citations omitted).

If elements one and two are present, but the defendant was the aggressor or used excessive force so that either element three or element four is not present, defendant will not be totally exonerated of the killing, but is guilty of voluntary manslaughter. *State v. Locklear*, 349 N.C. 118, 505 S.E.2d 277 (1998), *cert. denied*, —— U.S. ——, 143 L.Ed.2d 559 (1999) (citations omitted); *State v. Norris*, 303 N.C. 526, 279 S.E.2d 570 (1981). A failed perfect self-defense attempt is called imperfect self-defense.

A perfect self-defense claim was clearly untenable in this case. Even if the jury had believed defendant's claim that he attacked Murphy to prevent him from getting a gun kept in a back room, defendant admitted in his statement to police that he had gone to Murphy's house of his own volition and he made no claim that Murphy, who was considerably older than defendant and was dressed only in underpants, had a gun on or near his person when defendant tackled him, pinned him on the floor, and choked him. Thus, the evidence shows that defendant was the aggressor and that he used excessive force in preventing Murphy from gaining access to the gun. An imperfect self-defense strategy, therefore, may have been viable under the evidence, reducing defendant's culpability from murder to voluntary manslaughter.

Counsel's concession to the jury reflected this strategy. During jury selection and in opening arguments counsel admitted that

STATE v. PEREZ

[135 N.C. App. 543 (1999)]

defendant had participated in the events leading to Murphy's death and suggested that while defendant "might be guilty of some crime— some level of homicide . . . he is not guilty of first degree murder." In closing arguments, counsel urged the jury to find Flor Perez guilty of voluntary manslaughter rather than second degree murder." We conclude, under the evidence in this case, that counsel's concession of defendant's guilt of some offense less than first degree murder was a reasonable trial strategy. Counsel's performance was not deficient and defendant's claim of ineffective assistance of counsel must fail.

## II.

[2] Defendant assigns error to the admission of testimony by the medical examiner, Dr. Karen Chancellor, that it usually takes "several seconds to maybe a minute" for a victim to die from strangulation, but can take longer than a minute for a victim to die if he is engaged in a struggle. Defendant argues that there was no evidence of a struggle in this case and that the doctor's testimony regarding a struggle was inadmissible conjecture. We find no merit in his argument. Dr. Chancellor's testimony that manual strangulation may not result in death for several minutes if pressure is not consistently applied to the victim's neck was corroborative of defendant's statement that he strangled Murphy for a few minutes as well as Locklear's testimony that it took Murphy approximately ten minutes to die and that defendant eventually stomped on Murphy's neck because his hands were tired. Dr. Chancellor's testimony was also relevant to the issues of premeditation, deliberation, and intent, as the testimony pointed out that defendant had a substantial opportunity to cease the attack before Murphy's death occurred. This assignment of error is overruled.

## III.

[3] Next, defendant assigns error to the trial court's decision to admit into evidence portions of a letter which defendant wrote to Locklear from jail on 17 July 1996, several months after Murphy was killed. In the letter, defendant urged Locklear to divorce her estranged husband, and expressed displeasure at the prospect that the estranged husband was visiting Locklear. He wrote:

> Then I will really break out of here and hunt his ass down and really kill somebody. I did it once. It don't take too much to have one more under my belt, for real.

Citing *State v. Franklin*, 327 N.C. 162, 393 S.E.2d 781 (1990), defendant contends that the admission of these statements was inflammatory, had no purpose other than to show a predisposition to act violently, and violated G.S. § 8C-1, Rule 404(b). We disagree.

While G.S. § 8C-1, Rule 404(b) prohibits evidence of other acts to prove character, such as a propensity for violence, in order to show that a person acted in conformity therewith, the rule is generally one of inclusion of relevant evidence of such acts if offered for other purposes. *State v. White*, 340 N.C. 264, 457 S.E.2d 841, *cert. denied*, 516 U.S. 994, 133 L.Ed.2d 436 (1995). Here, the statements in defendant's letter were clearly relevant as an admission with respect to Murphy's death and also to show defendant's deliberate intent to kill. *See State v. Scott*, 343 N.C. 313, 471 S.E.2d 605 (1996). This assignment of error is overruled.

IV.

**[4]** Defendant also contends the prosecutor engaged in grossly improper argument to the jury by observing a four to five minute period of silence during her closing argument. Because defendant did not object to the argument at trial, he must show that the prosecutor's conduct was grossly improper in order to warrant a new trial. *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979).

Defendant cites *State v. Artis*, 325 N.C. 278, 323-25, 384 S.E.2d 470, 495-97 (1989) for the proposition that a prosecutor's use of any moment of silence in arguing to the jury during the guilt-innocence phase of a murder trial is highly prejudicial, and that such a tactic is permissible only in sentencing-phase arguments. We disagree. While the Court in *Artis* noted in *dicta* that such silences might be prejudicial if made during the guilt phase of trial, subsequent cases which have directly addressed this question have established no such bright-line rule. In *State v. Hoffman*, 349 N.C. 167, 505 S.E.2d 80 (1998), *cert. denied*, —— U.S. —— 143 L.Ed.2d 522 (1999), our Supreme Court found that a "prosecutor's use of two minutes of silence" during the guilt-innocence phase of the trial to demonstrate how long a victim spent bleeding on the floor before dying "was not so grossly improper as to merit *ex mero motu* intervention by the trial court." *Id.* at 185, 505 S.E.2d at 91. Similarly, in *State v. Jones*, 346 N.C. 704, 487 S.E.2d 714 (1997), the Court found that a prosecutor's use of five minutes of silence during the closing argument of the guilt-innocence phase of the trial was not grossly improper. *Id.* at 713-14, 487 S.E.2d at 720-21. Rather, the use of silence in these arguments fell within the range of

permissible inferences a prosecutor may draw for a jury during closing arguments. "A prosecutor in a capital trial is entitled to argue all the facts submitted into evidence as well as any reasonable inferences therefrom." *Id.* at 712, 487 S.E.2d at 719 (quoting *State v. Gregory*, 340 N.C. 365, 424, 459 S.E.2d 638, 672 (1995), *cert. denied,* ——— U.S. ———, 134 L.Ed.2d 478 (1996)). "Prosecutors may create a scenario of the crime committed as long as the record contains sufficient evidence from which the scenario is reasonably inferable." *Id.* at 712, 459 S.E.2d 719 (quoting *State v. Bishop*, 343 N.C. 518, 543, 472 S.E.2d 842, 855 (1996), *cert. denied,* 519 U.S. 1097, 136 L.Ed.2d 723 (1997)). In accordance with *Hoffman* and *Jones*, and in light of the evidence in this case indicating that defendant's strangulation of Murphy lasted as long as ten minutes, we cannot say the argument was grossly improper. The trial court did not err in failing, *ex mero motu*, to intervene.

V.

[5] Finally, we consider defendant's assignments of error with respect to the trial court's response to the jurors' request to review certain evidence. After beginning their deliberations, the jurors submitted a written request to review copies of all statements made to the police by Michelle Locklear and defendant, a copy of the entire letter written to Locklear by defendant, and "transcripts of the court testimony" of Locklear and two other witnesses. Over defendant's objection, the trial court permitted the jury to review copies of the statements, which had been admitted into evidence. The court sustained defendant's objection to the juror's request to see the letter, only a portion of which had been admitted into evidence. The trial court stated that it would deny the request for transcripts of the witnesses testimony "in the discretion of the court." Defendant assigns error, arguing that the trial court's rulings were either a failure to exercise discretion or an abuse of discretion.

A trial court's ruling in response to a request by the jury to review testimony or other evidence is a discretionary decision, ordinarily reviewable only for an abuse thereof. N.C. Gen. Stat. § 15A-1233(a); *State v. Hough*, 299 N.C. 245, 262 S.E.2d 268 (1980). Such a request, however, requires that the trial judge exercise its discretion, and where the trial court fails or refuses to exercise its discretion in the erroneous belief that it has no discretion to grant the jurors' request, it is error to refuse the request. *State v. Johnson*, 346 N.C. 119, 484 S.E.2d 372 (1997); *State v. Lang*, 301 N.C. 508, 272 S.E.2d 123 (1980).

**STATE v. PEREZ**

[135 N.C. App. 543 (1999)]

Defendant contends the trial court based its ruling on the fact that the court reporter who had taken the testimony was no longer available, having been assigned elsewhere by the Administrative Office of the Courts. From the transcript, it is apparent that the trial court considered the reporter's absence as a factor in exercising its discretion, however, it is permissible for the trial court to weigh, in exercising its discretion, the time, practicality, and difficulty involved with granting the request. *State v. Fullwood,* 343 N.C. 725, 472 S.E.2d 883 (1996), *cert. denied,* 520 U.S. 1122, 137 L.Ed.2d 339 (1997); *State v. Jeune,* 332 N.C. 424, 420 S.E.2d 406 (1992). Here, the trial judge clearly exercised his discretion in ruling upon the jurors' request to review the evidence, allowing their request in part and stating on no less than three occasions that the denial of their requests to review the transcripts was made in his discretion. "When the trial court states for the record that, in its discretion, it is allowing or denying a jury's request to review testimony, it is presumed that the trial court did so in accordance with N.C.G.S. § 15A-1233." *State v. Weddington,* 329 N.C. 202, 208, 404 S.E.2d 671, 675 (1991) (citing *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988)).

Thus, we review the ruling under an abuse of discretion standard, i.e., whether the ruling "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Dial,* 122 N.C. App. 298, 308, 470 S.E.2d 84, 91, *disc. review denied,* 343 N.C. 754, 473 S.E.2d 620 (1996). We find no abuse of discretion here. The trial court explained that to allow the request might lend undue importance to the portions of the evidence reviewed without giving equal importance to the other evidence in the case and cautioned the jurors that it was their duty to recall and consider all of the evidence.

The remaining assignments of error set forth in the record on appeal have been abandoned. N.C.R. App. P. 28(a), 28(b)(5). Defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.