STEELMAN, Judge.
Defendant, Thomas Wesley Wheeler, appeals his convictions for five counts of first degree sexual offense and five counts of taking indecent liberties with a minor. For the reasons discussed herein, we affirm the trial court.
The evidence at trial tended to show the victims, identified here as A.B. and P.D., were half-sisters and defendant's nieces by marriage. The girls mother, C.D., was defendant's sister-in-law.
Defendant and his family moved to North Carolina around May or June of 1997 so that his wife could be closer to her sister, C.D. A.B., whose mother was divorced from her father, J.M. (father), stayed with her mother and sister during the week, and spent most week ends with her father. The girls also spent a lot of time at the defendant's home, with him and their three cousins, who at the time of trial were ages twelve, eleven and eight. Defendant baby sat A.B. and P.D as many as three or four days a week while their mother was working. During the time defendant baby sat the girls, his wife, the victims' aunt, was rarely at home.
At trial, A.B. testified that defendant first began touching her inappropriately when the family had gone on a camping trip in the summer of 1998. While on the camping trip, she said defendant slept in the same tent as her sister, her three cousins, and herself. While A.B. tried to go to sleep, she testified that defendant began touching her "in places he wasn't supposed to." She said he stuck his hand down the back of her pants and touched her private parts. She also said he made her touch his "front private parts."
A.B. testified that after the camping trip, defendant would touch her inappropriately almost every time that she was at his house. She said defendant would sometimes touch her in her private parts with his fingers and with his mouth while they were in the living room on the couch. A.B. testified two of her cousins would often be in the living room playing video games while defendant was touching her. However, her cousins denied that they ever saw their father act inappropriately towards the girls. A.B. said defendant had also taken her to his bedroom and performed those same acts upon her. This continued until A.B. was seven years old. A.B. told her sister, P.D., about defendant touching her, and P.D. admitted that defendant had being doing the same type of things to her. In July 2002, the girls told their father, J.M. about what defendant had being doing to them. J.M. took the girls to Cary Pediatrics to have the girls examined for sexual abuse. They were referred to Wake Medical Center to be examined by a more qualified physician. The results from the physical exams were inconclusive as to whether the girls had been abused.
On 19 August 2002, A.B. met with Nivien Ibrahim Carey (Carey), a licensed clinical social worker, who testified at trial as an expert in child sexual abuse. Carey testified that the girls exhibited characteristics that could be related to sexual abuse. Defendant was indicted for five counts of first degree sex offense and five counts of taking indecent liberties with a minor. These matters were tried before a jury, which found defendant guilty of all charges. The trial court sentenced defendant to five consecutive sentences of 288 to 355 months for the first degree sexual offenses and five consecutive sentences of nineteen to twenty-three months for the indecent liberties charges. Defendant appeals.
In defendant's first assignment of error, he contends the trial court violated his constitutional rights when it overruled his objection to closing the courtroom while the victims testified without making the necessary findings that the closing was appropriate. Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, `the law does not permit parties to swap horses between courts in order to get a better mount'" in the reviewing appellate court. State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). See also State v. Woodard, 102 N.C. App. 687, 696, 404 S.E.2d 6, 11 (applying "no swapping horses" rule where the defendant objected on one theory at trial to denial of his request for an instruction and then asserted a different theory on appeal).
At trial, the State requested the courtroom be cleared of all bystanders and other witnesses, including defendant's wife, while P.D. and A.B., ages seven and eight, testified. The transcript shows that defense counsel objected to the trial court's decision to remove defendant's wife from the courtroom during the girl's testimony, while allowing the State's lead investigator to remain. Defense counsel had no objection whatsoever to the courtroom being closed to extraneous witnesses during the testimony of the girls, in fact he stated "[a]s far as extraneous witnesses, I don't have any problem with that." In defendant's brief, however, he contends, for the first time, that the trial court's error was in failing to make findings of fact on the record to show the closure of the courtroom was appropriate, and this violated his constitutional right to a fair and public trial, not that the lead investigator was allowed to remain, while defendant's wife had to leave the courtroom when the girls testified. See Anderson v. Assimos, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (noting that "[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal). Furthermore, the trial court is not required to make specific findings of fact where the defendant consents to the closure of the courtroom, as occurred in this case. State v. Starner, 152 N.C. App. 150, 154, 566 S.E.2d 814, 817 (2002), certiorari. denied, 356 N.C. 311, 571 S.E.2d 209 (2002).
Based on the above stated principles, defendant cannot make for the first time on appeal a different argument than he made before the trial court. This assignment of error is without merit.
In defendant's second assignment of error he contends the trial judge's statements to one of the victims, A.B., during the trial constituted an impermissible expression of opinion about her credibility, prejudicing defendant, and thus requiring a new trial.
On the first day of trial, the trial judge questioned eight-year-old A.B. to determine whether or not she understood what it meant to tell the truth in order to ascertain whether she was competent to testify. A.B.'s testimony was not concluded that day and the trial judge recessed for the night. The next day, before A.B. continued testifying, the following exchange occurred between the trial judge and A.B.:
THE COURT: [A.B.], if you will come back up here and have a seat, please. Now, [A.B.], you need to tell the truth today like you did yesterday.
THE WITNESS: Okay.
THE COURT: Okay?
THE WITNESS: Um-hum.
While defendant did not object to this statement at trial, he was not required to do so in order to preserve this issue for appeal. State v. Young, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). This is so because the prohibitions against a trial judge expressing their opinion contained in N.C. Gen. Stat. § 15A-1222 and N.C. Gen. Stat. § 15A-1232, are mandatory. Id. As a result, we consider the merits of this issue.
During any stage of a trial, the trial judge is prohibited from expressing "any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2004). This prohibition includes opinions regarding the credibility of a witness. State v. Hensley, 120 N.C. App. 313, 320-21, 462 S.E.2d 550, 554 (1995). Nevertheless, not every improper comment by the trial judge will result in prejudicial error requiring a new trial. State v. Blackstock, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). "[I]n a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's actions intimated an opinion as to . . . a witness's credibility that prejudicial error results." Id. When reviewing whether a judge's comments constitute an impermissible expression of opinion, we consider the totality of the circumstances, rather than view the comment in isolation. State v. Jones, 358 N.C. 330, 355, 595 S.E.2d 124, 140, certiorari. denied, ___ U.S. ___, 160 L. Ed. 2d 500 (2004); State v. Nicholson, 355 N.C. 1, 59, 558 S.E.2d 109, 147, certiorari. denied, 537 U.S. 845, 154 L. Ed. 2d 71 (2002). The burden is on the defendant to demonstrate that he was prejudiced as a result of the judge's remarks. Jones, 358 N.C. at 355, 595 S.E.2d at 140.
In the instant case, defendant contends the judge's statement, "Now, [A.B.], you need to tell the truth today like you did yesterday[,]" stated an opinion as to the credibility of A.B. Defendant asserts that the jury could not have understood the statement as anything but the trial court's unequivocal opinion that A.B. had testified truthfully the day before when she recounted the sexual abuse defendant committed against her. If one were reviewing the trial court's statement to A.B. in isolation, this interpretation might have been possible. However, when considering the statement in light of all the attendant circumstances, it should be interpreted differently. The trial judge's statement made to A.B. before she continued testifying the next day should be interpreted as a reminder for her to tell the truth when she testified, just like she had been instructed to do the day before. The trial judge was addressing an eight-year-old child and was speaking to her on a level she could understand. This is made even more evident by the fact that when the judge addressed an adult, he stated, "Miss Carey remains by her oath to tell the truth and is with the defendant." In addition, in the trial judge's instructions to the jury, he made it clear that the jurors were the "sole judges of the credibility and believability of each and every witness." In considering the totality of the circumstances, we find the judge's statement did not constitute an impermissible expression of opinion as to the witness' credibility. Defendant has failed to demonstrate he was prejudiced as a result thereof. This assignment of error is without merit.
In defendant's third assignment of error he contends the trial court erred when it prevented him from eliciting testimony from A.B. concerning a possible motive her mother may have had to encourage her daughters to fabricate their accusations of sexual abuse against their uncle.
Defendant asserts in his brief that he "relied, in part, on a contention that the charges against him were fabricated because his sister-in-law, the mother of the two alleged victims, did not want him to move his family to New Hampshire[]" and that "[t]his desire provided a motivation for her to manipulate these charges[.]" Defendant points to the following portion of A.B.'s testimony as constituting reversible error.
Q. [Defense Attorney:] Did you want your cousins to move?
A. [A.B.] No.
Q. Did your mommy want your cousins to move?
A. No.
MS. KENNY: Objection what her mommy wants.
THE COURT: Sustained.
MS. KENNY: Motion to strike.
THE COURT: Allowed.
Defendant relies upon State v. Helms, 322 N.C. 315, 367 S.E.2d 644 (1988) to support his contention that the evidence concerning a possible motive for the girls to fabricate the allegations of sexual abuse was relevant and should have been admitted. In Helms, a stepmother was accused of sexually molesting her husband's sons. Prior to the natural mother's allegations of sexual abuse, the defendant, the boys' father, and one of the boys met with a lawyer to discuss obtaining custody of the boys from their natural mother. The trial court refused to allow the defendant to present evidence to the jury regarding the purpose of the visit. Our Supreme Court held this to be error because the evidence tended to demonstrate a motive for the boys' mother to fabricate the charges against the defendant. Id. at 319, 367 S.E.2d at 647.
This case is clearly distinguishable from Helms, where the evidence the trial court excluded went to the purpose of the family's visit to the lawyer. In the instant case, the testimony defense counsel sought to elicit called for A.B. to speculate as to her mother's motivation, and the trial court properly sustained the objection to the admission of this evidence. However, this did not preclude defense counsel from cross-examining the girls' mother concerning a possible motive to fabricate. The girls' mother testified at trial, yet defense counsel did not attempt to elicit such testimony upon cross-examination. Further, defense counsel made no proffer as to what A.B. would have testified had she been allowed to do so, and we will not speculate as to the possible content of that testimony. See State v. Barton, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994). This assignment of error is with merit.
In defendant's fourth assignment of error, he contends the trial court erred when it failed to affirmatively exercise its discretion under N.C. Gen. Stat. § 15A-1233, by denying the jury's request to review a portion of a defense witness' testimony, thereby entitling defendant to a new trial.
During its deliberations, the jury requested leave to review the testimony of one of defendant's children. The trial judge denied the request, stating to the jury, "in my discretion I am going to deny your request. I don't want to give undue influence to one person's testimony over the other. You are to consider all the evidence in this case at arriving at your verdict."
Defendant cites to State v. Barrow, 350 N.C. 640, 517 S.E.2d 374 (1999), State v. Ashe, 314 N.C. 28, 331 S.E.2d 652 (1985), and State v. Lang, 301 N.C. 508, 272 S.E.2d 123 (1980) to support his contention that the trial court did not exercise it's discretion in denying the jury's request to review one witness' testimony. This case is readily distinguishable from each of those cases. In those cases, the trial court denied the motion because it erroneously believed it did not have the authority to grant the request. See e.g. State v. Barrow, 350 N.C. 640, 647, 517 S.E.2d 374, 378 (1999) (holding the trial court's statement that it "doesn't have the ability to now present to you the transcription of what was said during the course of the trial" indicated a failure to exercise discretion). In the instant case, the trial court explicitly stated it was exercising its discretion and denying the request, then gave a reason supporting its decision. The trial court's reasoning in no way indicated that it believed it lacked the authority to grant such a request. "When the trial court states for the record that, in its discretion, it is allowing or denying a jury's request to review testimony, it is presumed that the trial court did so in accordance with N.C.G.S. § 15A-1233." State v. Weddington, 329 N.C. 202, 208, 404 S.E.2d 671, 675 (1991).
Since a trial court's ruling under N.C. Gen. Stat. § 15A-1233 is within the court's discretion, we review the decision applying an abuse of discretion standard, that is, "whether the ruling `was so arbitrary that it could not have been the result of a reasoned decision.'" State v. Perez, 135 N.C. App. 543, 555, 522 S.E.2d 102, 110 (1999) (citations omitted). Just as in Perez, we find no abuse of discretion where the trial court explained that to grant the request could lend undue importance to the portions of the evidence reviewed without giving equal importance to the other evidence in the case and cautioned the jurors that it was their duty to recall and consider all of the evidence. Accord id.
Defendant argues in the alternative, that if the trial court did exercise its discretion as required by statute, then he was denied the effective assistance of counsel, when his attorney acquiesced to the court's denial of the jury's request.
In order for a defendant to demonstrate he was denied effective assistance of counsel he must satisfy a two-prong test:(1) his counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) his attorney's deficient performance prejudiced him. State v. Fletcher, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001), certiorari. denied, 537 U.S. 846, 154 L. Ed. 2d 73, 123 S. Ct. 184 (2002) (applying the test set out in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, (1984)). In other words, counsel's errors must be considered "`so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. (citations omitted).
Our Supreme Court has held that "`counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear.'" State v. Roache, 358 N.C. 243, 279, 595 S.E.2d 381, 405 (2004) (citations omitted). It is presumed that trial counsel's representation is within the boundaries of acceptable professional conduct. Id. at 280, 595 S.E.2d at 406.
In analyzing the reasonableness of the attorney's actions under the first prong of the test, "the material inquiry is whether the actions were reasonable considering the totality of the circumstances at the time of performance." State v. Gainey, 355 N.C. 73, 112-113, 558 S.E.2d 463, 488, certiorari. denied, 537 U.S. 896, 154 L. Ed. 2d 165 (2002).
In the instant case, defense counsel's consent to the denial of the jury's request was not an unreasonable trial strategy. When the judge inquired as to defense counsel's position regarding the jury's request, defense counsel stated: "it may open the floodgates for [the jury] asking for transcripts of everyone as the District Attorney pointed out. We ask the Judge simply instruct the jury it is their responsibility to recall the evidence as best they can." This statement was an accurate prediction of what could have occurred. Had the trial judge permitted the jury to review one witness' testimony, it could have resulted in additional requests from the jury to review the transcripts of other witnesses, including the two victims. It can reasonably be deduced from the record that defense counsel made a tactical decision so that the testimony of other witnesses would not be requested. Defendant has not shown his counsel's actions fell below the standard of reasonableness. As defendant has failed to satisfy the first prong of the test, this assignment of error is without merit.
In defendant's fifth assignment of error, he contends the trial court committed reversible error in allowing an expert witness to give an impermissible opinion as to A.B.'s credibility.
Rule 702(a) of the Rules of Evidence permits "a witness qualified as an expert by knowledge, skill, experience, training, or education, [to] testify thereto in the form of an opinion" if it will assist the trier of fact. N.C. Gen. Stat. § 8C-1, Rule 702(a) (2004). In a prosecution for a sexual offense involving a child victim, an expert's opinion that sexual abuse has in fact occurred is inadmissible absent physical evidence supporting a diagnosis of sexual abuse, because such testimony is an impermissible opinion which goes to the victim's credibility. State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002). However, an expert may testify about the profiles of sexually abused children and whether a particular child exhibits symptoms or characteristics consistent with such a profile when a proper foundation has been laid. Id. at 267, 559 S.E.2d at 789.
In the instant case, defendant cites as error the admission of testimony of Carey, the social worker who was qualified as an expert in child sexual abuse. In defendant's brief, he points to a statement made by Carey that A.B. "had a lot of anxiety issues which is pretty common, what we see with a lot of children, specifically the children that I've seen[,]" and recommended A.B. receive therapy for possible sexual abuse. This statement was made during voir dire and outside the presence of the jury. Defendant's assignment of error is to a specific portion of the transcript, page 332, lines 15-25. This portion of the transcript sets out the ruling of the trial court at the end of the voir dire of Carey. The trial court ruled that Carey was allowed to testify about characteristics of children who have been abused and that A.B. exhibited the characteristics of being anxious and fearful, as such testimony with within Carey's expertise and experience. This ruling was correct in light of the applicable case law. See id.
Following the jury's return to the courtroom, the prosecutor laid a proper foundation by questioning Carey in detail about characteristics common to sexually abused children and then related that to whether A.B. exhibited any of those characteristics. The prosecutor also asked whether the anxiety and fearfulness A.B. demonstrated, was common among abused children. At no point did Carey say A.B. had in fact been abused, only that in light of her behavior and the things she said during the interview, that she recommended her for therapy. This did not constitute impermissible opinion testimony as to the victim's credibility.
Defendant also asserts that Carey did not give any specific examples of the manifestation of anxiety or fear that she witnessed in the victims. This assertion is incorrect. Since Carey did not do a physical examination of A.B., she could not attest to whether A.B. had any physical injuries indicating sexual abuse. However, she did point to several factors that led her to believe A.B. was fearful and had anxiety, including A.B. shaking and the way her answers became disjointed towards the end of the interview. Carey's testimony, following the voir dire and in the presence of the jury, was consistent with what is allowed by law. Just because this evidence may support the credibility of the victim does not render it inadmissible per se. State v. Kennedy, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987). This assignment of error is without merit.
In defendant's sixth and final assignment of error he contends one of the indictments for first degree sexual offense did not allege all of the elements of the crime. Stated more specifically, he contends the indictment did not specify the exact sexual act defendant was charged with committing, and thereby violated defendant's constitutional rights to notice and due process. Defendant recognizes this Court previously rejected a similar argument in State v. O'Hanlan, 153 N.C. App. 546, 550-51, 570 S.E.2d 751, 755 (2002), certiorari. denied, 358 N.C. 158, 593 S.E.2d 397 (2004). See also State v. Harris, 140 N.C. App. 208, 215-16, 535 S.E.2d 614, 619, appeal dismissed, disc. review denied, 353 N.C. 271, 546 S.E.2d 122 (2000) (upholding as constitutional the short-form indictments for rape and sexual offenses). Defendant urges this Court to reconsider these holdings, or in the alternative to find O'Hanlan distinguishable. The challenged indictment contained all the necessary elements as listed in N.C. Gen. Stat. § 15-144.2, which our appellate courts have found to be sufficient. Accordingly, defendant's assignment of error is without merit.
NO ERROR.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).