ARROWOOD, Judge, dissenting.
I respectfully dissent. I would hold that, under State v. Harbison , 315 N.C. 175, 337 S.E.2d 504 (1985), cert. denied , 476 U.S. 1123, 106 S.Ct. 1992, 90 L.Ed.2d 672 (1986), there was a per se violation of defendant's right to effective assistance of counsel.
On appeal, defendant first argues that he was denied his constitutional right to effective assistance of counsel when his counsel conceded he was guilty of assault on a female during closing arguments. Defendant relies on our Supreme Court's decision in Harbison , and contends his counsel's concession amounts to a per se violation of the Sixth Amendment, thereby requiring a new trial.
In Harbison , the Court noted that it recently adopted in State v. Braswell , 312 N.C. 553, 324 S.E.2d 241 (1985), the two-part test for resolving claims of ineffective assistance of counsel enunciated by the United States Supreme Court in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Harbison , 315 N.C. at 178, 337 S.E.2d at 506. That two-part test requires:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel *320 made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Braswell , 312 N.C. at 562, 324 S.E.2d at 248 (quoting Strickland , 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 ) (emphasis omitted). Our Supreme Court has more recently explained the test and the required showings as follows:
To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A *546 reasonable probability is a probability sufficient to undermine confidence in the outcome.
State v. Allen , 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), cert. denied , 549 U.S. 867, 127 S.Ct. 164, 166 L.Ed.2d 116 (2006).
In Harbison , however, the Court recognized that, "[a]lthough [it] still adheres to the application of the Strickland test in claims of ineffective assistance of counsel, there exist 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' " 315 N.C. at 179, 337 S.E.2d at 507 (quoting United States v. Cronic , 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667 (1984) ). For example, "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." Id. at 180, 337 S.E.2d at 507. The Court reasoned,
[w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.
*321 Id. Consequently, the Court held that "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." Id. at 180, 337 S.E.2d at 507-508.
In the present case, the State brought the potential for a Harbison issue to the trial court's attention prior to opening statements. The State explained that defendant did make some admissions in a statement to law enforcement and cautioned that the court may need to make a Harbison inquiry if defense counsel is going to address the admissions in the opening statements. The trial court then questioned the defense as follows:
THE COURT: Does the defense have any Harbison issues?
[DEFENSE]: Not immediately, Your Honor. That's not something I was expecting yet.
THE COURT: Are you expecting to make any comments in your opening with regard to admissions?
[DEFENSE]: Well, Judge, we have a lot to say about how and why he was interrogated which may brush up against --
THE COURT: Well, can you get more specific than that. Because I want to make sure your client understands that the State has the burden to prove each and every element of each claim and if you're going to step into an admission during opening then I need to make sure that he understands that and he's authorized you to do that.
[DEFENSE]: Not in opening, I can stipulate to that.
The exchange ended with the court stating, "[l]et's rereview that when we get back from lunch." The court, however, did not come back to the issue. In fact, there is no further mention of the potential Harbison issue in the record.
The evidence presented by the State at trial included a video of defendant's interview with police. In that interview, defendant admitted to a physical altercation with the alleged victim that resulted in the alleged victim sustaining injuries.
It appears from the record that defense counsel knew the interview was damaging to defendant's case and addressed it during the closing *322 arguments. Defense counsel suggested to the jury that the interview was coercive, noting that it was "9:00 at night, surrounded by cops, pulled off the street to make a voluntary statement[,]" and they begin talking to defendant about a moped that is unrelated to these charges. Defense counsel then, however, made the following statements:
You heard [defendant] admit that things got physical. You heard him admit that he did wrong, God knows he did. They got in some sort of scuffle or a tussle or whatever they want to call it, she got hurt, he felt bad, and he expressed that to detectives. Now they run with his one admission and *547 say "well, then everything [the alleged victim] -- everything else [the alleged victim] said must be true."
Because [defendant] was being honest, they weren't honest with him.
Following these statements, defense counsel returned to highlighting the coercive nature of the interview, stating, "[t]wo detectives for three hours into midnight. The whole time he's thinking he's going home."
Later in the closing argument, defense counsel stated that "[the alleged victim] was injured by [defendant]" and addressed the severity of the charges by stating, "[t]his is as serious as it gets, second-degree rape, second-degree sexual assault, assault by strangulation." Defense counsel did not mention the assault on a female charge serving as the underlying offense for habitual misdemeanor assault. Finally, in concluding the arguments to the jury, defense counsel stated,
Jury, what I'm asking you to do is you may dislike [defendant] for injuring [the alleged victim], that may bother you to your core but he, without a lawyer and in front of two detectives, admitted what he did and only what he did. He didn't rape this girl. ...
... All I ask is that you put away any feelings you have about the violence that occurred, look at the evidence and think hard. Can you convict this man of rape and sexual offense, assault by strangulation based on what they showed you? You can't. Please find him not guilty.
Defendant now contends these statements by defense counsel during closing arguments amounted to a concession of guilt to the charge of assault on a female without his consent, in violation of Harbison . In response to defendant's Harbison argument, the State briefly contends *323 that this case does not fall under the prohibition in Harbison because "there was never any specific concession of guilt" because "[c]ounsel never stated to the jury that defendant was guilty of assault on a female in contrast to the counsel in Harbison ." The State cites various cases in which our courts have determined there were no Harbison violations, such as cases in which counsel admitted an offense that was not charged, see State v. Gainey , 355 N.C. 73, 558 S.E.2d 463, cert. denied , 537 U.S. 896, 123 S.Ct. 182, 154 L.Ed.2d 165 (2002) ; State v. Wilson , 236 N.C. App. 472, 762 S.E.2d 894 (2014), or cases in which counsel did not concede all elements of the offense charged, see State v. Hinson , 341 N.C. 66, 459 S.E.2d 261 (1995) ; State v. Fisher , 318 N.C. 512, 350 S.E.2d 334 (1986) ; State v. Maniego , 163 N.C. App. 676, 594 S.E.2d 242 (2004). The State further contends that defense counsel in this case "asked the jury to find defendant not guilty of the charged offenses" at the close of his argument.
Upon review of these cases, I would hold defense counsel's statement to the jury in closing arguments amounted to a concession of defendant's guilt to assault on a female. Defense counsel did not simply recite evidence, he choose to highlight specific evidence that defendant physically injured the alleged victim and argued to the jury that defendant honestly admitted to police what he did. It appears defense counsel used this strategy in order to cast doubt on the allegations of more serious offenses that defendant did not admit to police. Defense counsel further indicated defendant was wrong for his actions, defendant felt bad about his actions, and explicitly stated "he did wrong, God knows he did." I agree with defendant that defense counsel's statements amount to an admission to assault on a female, distinguishing this case from those cases cited by the State. Furthermore, the State mischaracterizes defense counsel's final plea to the jury to find defendant not guilty. As shown above, defense counsel only emphasized the serious nature of second-degree rape, second-degree sexual assault, assault by strangulation. Defense counsel then, after repeating those three charges, asked the jury to find defendant not guilty.
Considering defense counsel's argument in full, it is evident defense counsel acknowledged defendant's guilt on the assault on a female charge in an attempt to cast doubt on the evidence of the more serious charges.
For the majority of the State's response, the State does not focus on the substance of defense counsel's argument. Instead, the *548 State focuses on defense counsel's strategy. The State emphasizes that the uncontroverted evidence was that defendant admitted to police during the *324 interview that he got physical with the alleged victim and contends it was a valid trial strategy for defense counsel to accept the evidence of assault on a female and argue doubt in the evidence of the more severe charges. The State asserts that this was defendant's "only viable defense" and acknowledges that it was successful because defendant was acquitted of the more severe charges. Thus, the State argues defense counsel was not ineffective and defendant cannot show prejudice. This argument by the State, however, does not address the Harbison issue.
"[M]atters of trial strategy ... are not generally second-guessed by this Court." State v. Prevatte , 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), cert. denied , 538 U.S. 986, 123 S.Ct. 1800, 155 L.Ed.2d 681 (2003). However, just as our Supreme Court explained in Harbison , this Court has explained that
[a] concession of guilt by a defendant's counsel has the same practical effect as a guilty plea, because it deprives the defendant of his right against self-incrimination, the right of confrontation and the right to trial by jury. Therefore, a decision to make a concession of guilt as a trial strategy is, like a guilty plea, a decision which may only be made by the defendant and a concession of guilt may only be made with the defendant's consent. Due process requires that this consent must be given voluntarily and knowingly by the defendant after full appraisal of the consequences and a clear record of a defendant's consent is required.
State v. Perez , 135 N.C. App. 543, 547, 522 S.E.2d 102, 106 (1999) (citations omitted), appeal dismissed and disc. review denied , 351 N.C. 366, 543 S.E.2d 140 (2000).
[This Court] reject[ed], however, [the] defendant's argument that an acceptable consent requires the same formalities as mandated by statute for a plea of guilty. Our Supreme Court has found a knowing consent to a concession of guilt in compliance with Harbison where the record showed the defendant was advised of the need for his authorization for the concession, defendant acknowledged that he had discussed the concession with his counsel and had authorized it, and the defendant thereafter acknowledged that his counsel had made the argument desired by him.
Id. at 547-48, 522 S.E.2d at 106 (citations omitted).
*325 Here, defendant does not question the strategy of defense counsel, because that is not at issue. Defendant only challenges defense counsel's concession of guilt on the charge of assault on a female without his authorization. I agree with defendant that there is nothing in the record to show that he agreed to defense counsel's concession. Therefore, under Harbison , there was a per se violation of defendant's right to effective assistance of counsel. No further showing is required. Accordingly, I would hold defendant is entitled to a new trial on the charge of assault on a female, the underlying offense for habitual misdemeanor assault.
Defendant also seeks for this Court to review the trial court's denial of his MAR pursuant to his second petition for writ of certiorari filed at the same time as his appellate brief on 17 October 2018. Unlike the majority, I would simply deny defendant's second petition as moot because of my determination defendant is entitled to a new trial on the first issue.
For the reasons above, I dissent.